UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AIR TECH EQUIPMENT, LTD., et al.,

                   Plaintiffs,              **MEMORANDUM AND ORDER**

     -against-                                  05-CV-77 (CPS)

**HUMIDITY VENTILATION SYSTEMS, INC., et al.,**

                   **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is a dispute between the parties as to whether defendants Humidity Ventilation Systems, Inc., et al. ("defendants") are entitled to redact from their discovery materials information concerning the identities of their customers for alternative dehumidifiers and the prices they charged their customers for such products.[1] Defendants contend that the information sought is highly sensitive[2] and irrelevant to the claims and defenses in the case; plaintiffs counter that the redacted information is relevant to defendants' antitrust counterclaims and/or plaintiffs' defenses thereto.[3] For the reasons that follow, plaintiffs' motion for a compulsion order is granted in part and denied in part.

---

[1] This issue has generated a flurry of correspondence from the parties -- i.e., letters from plaintiffs Air Tech Equipment, Ltd., et al. ("plaintiffs"), on April 4, April 21, April 25, and May 12, 2006, and from defendants on April 11, April 21, April 25, April 28 and May 9, 2006 -- as well as two telephone conferences with the Court, on April 17 and May 8, 2006. For ease of reference, the parties' submissions will be cited as "[Date] [Pl./Def.] Letter"; transcripts of the telephone conferences will be cited as "[Date] Tr."

[2] Plaintiffs and defendants are direct competitors.

[3] Plaintiffs do not argue that the information is relevant to plaintiffs' own claims, for trademark and patent infringement, false designation of origin and unfair competition. See generally 4/21/06 Pl. Letter.

**DISCUSSION**

As a preliminary matter, plaintiffs argue that defendants waived their relevance objection by failing to timely object on that basis. See 4/21/06 Pl. Letter at 2. Plaintiffs' waiver argument requires little discussion; in responding to plaintiffs' document demands, defendants specifically incorporated into each of the challenged responses defendants' General Objection No. 2, which asserted that the information sought was "irrelevant." See generally 4/25/06 Def. Letter at 1-2. Therefore, defendants preserved their objection on relevance grounds.

In opposing disclosure of the identities of defendants' customers and their specific unit pricing, defendants rely on In re Vitamins Antitrust Litigation, 198 F.R.D. 296, 297 (D.D.C. 2000), and In re Pressure Sensitive Labelstock Antitrust Litigation, 226 F.R.D. 492, 494 (M.D. Pa. 2005), which denied requests for similar "downstream data" from parties prosecuting antitrust claims.[4] In Pressure Sensitive Labelstock, the court expressly noted that "courts generally proscribe downstream discovery" in price-fixing cases, id. at 498, inasmuch as "a price fixing conspiracy claim may not be defended on the ground that the purchaser passed on the higher cost of the product to its customers." Id. at 497 (citing Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 489 (1968)). In Vitamins Antitrust Litigation, the court likewise rejected a request for plaintiffs' downstream data, concluding that the information was, at best, only "marginally" relevant to the issues in that case. 198 F.R.D. at 301, 302. Other opinions, not cited by the parties, have reached similar results. See In re Auto. Refinishing Paint Antitrust Litig., No. MDL 1426, 2006 WL 1479819, at *7-8 (E.D.

---

[4] In those cases, the parties from whom the information was sought were the plaintiffs; here, where the antitrust claims were asserted as counterclaims, it is defendants who are resisting production of their downstream data.

Pa. May 26, 2006) (declining to "depart from the long-held practice of proscribing discovery of downstream data" in a price-fixing case); In re Plastics Additives Antitrust Litig., No. Civ.A. 03-2038, 2004 WL 2743591, at *16 (E.D. Pa. Nov. 29, 2004) (noting that "courts have refused to require production of downstream data in antitrust price-fixing cases" and concluding that "defendants have not established the relevance of plaintiffs' downstream data to the merits of plaintiffs' claims"); but see In re Urethane Antitrust Litig., 237 F.R.D. 454, 462-64 (D. Kan. 2006) (allowing discovery of downstream sales data, as it was relevant to class certification issues).

In this case, plaintiffs concede that they bear the burden of establishing the relevance of the redacted information. See 4/21/06 Pl. Letter at 4; see also 4/21/06 Def. Letter at 1-2 (collecting cases). Plaintiffs have not overcome defendants' showing that the redacted data are irrelevant to plaintiffs' liability on, or defenses to, defendants' antitrust counterclaims. See 4/21/06 Def. Letter at 3-4; 4/25/06 Def. Letter at 3-5.[5] However, the issue of damages stands on a different footing. In fact, defendants' antitrust counterclaims contain express language charging that plaintiffs' antitrust violations "hampered [defendants] from growing and profiting

---

[5] For example, plaintiffs confuse the relevance of downstream data from parties defending antitrust claims with downstream data from parties prosecuting antitrust claims. Thus, plaintiffs assert that in price discrimination cases, "data derived from cost studies are admissible and specific evidence of cost variances with different purchasers is needed to justify the claim." 4/21/06 Pl. Letter at 4 (citing Reid v. Harper & Bros., 235 F.2d 420 (2d Cir. 1956)). However, in the case cited, the cost study referenced by the Second Circuit concerned the costs incurred by the party *defending* the antitrust claims in transacting business with *its* customers. See Reid, 235 F.2d at 421. Furthermore, plaintiffs rely on decisions that predate the 1993 and 2000 amendments to Rule 26(b) of the Federal Rules of Civil Procedure, which, among other things, sought to "enable the court to keep tighter rein on the extent of discovery," Fed. R. Civ. P. 26(b), advisory committee note to 1993 amendment, and narrowed the scope of relevancy from "subject matter" of the action to "claim or defense of any party . . . ." See Fed. R. Civ. P. 26(b)(1), advisory committee note to 2000 amendment.

from their business in the relevant market of alternate dehumidfiers." Second Amended Answer to Complaint, Affirmative Defenses and Counterclaims, dated January 20, 2006 ("2d Am. Ans.") ¶¶ 134, 139, 145, 151; see 4/25/06 Pl. Letter at 1-2.

When asked to explain how they intended to prove the nature and extent of their antitrust damages, defendants assured the Court, in a telephone conference, that they would not rely on information concerning their specific customers or unit pricing. See 5/8/06 Tr. at 18, 19-22, 27. They then detailed in a letter their theories of damages, none of which involved the redacted information. See 5/9/06 Def. Letter at 2-3. With respect to some of the antitrust counterclaims, defendants' analysis has satisfied the Court's concerns.[6] With respect to others, plaintiffs have the better argument.

In their Seventh and Eighth Counterclaims, defendants allege that plaintiffs engaged in price fixing in violation of Section 1 of the Sherman Act, see 2d Am. Ans. ¶¶ 129-39, and thereby "hampered [defendants] from growing and profiting from their business in the relevant market of alternative dehumidifiers . . . ." Id. ¶¶ 134, 139. In arguing that the redacted information is irrelevant to these allegations, defendants assert that they will prove their damages "[b]y comparing defendant Safe N Dry's total sales of Humidex products prior to Plaintiffs' wrongful conduct in violation of Section 1 of the Sherman Act against Safe N Dry's total sales subsequent to Plaintiffs' wrongful conduct . . . ." 5/9/06 Def. Letter at 2.

---

[6] Defendants' damages on their Eleventh Counterclaim, alleging price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13, would be calculated based on the overcharge paid to plaintiffs by defendant Safe N Dry. See 5/9/06 Def. Letter at 3 (collecting cases); see also 5/8/06 Tr. at 29. And damages on defendants' Ninth and Tenth Counterclaims, which challenge the *bona fides* of plaintiffs' claims for patent infringement and misappropriation of confidential information, would be limited to legal expenses in defending against those claims. See 5/9/06 Def. Letter at 3; see also 5/8/06 Tr. at 21.

Defendants wrongly assume that they therefore need not disclose information that "might support an alternative explanation . . . ." 5/12/06 Pl. Letter at 1. To cite one example proffered by plaintiffs, "perhaps [defendants'] pricing practices hampered defendants' growth and profitability." Id. at 2; see 5/8/06 Tr. at 23, 25.

Particularly in light of defendants' specific allegations of injury in pleading their counterclaims, the Court concludes that plaintiffs are entitled to some information to test whether defendants' purported loss of business was attributable to factors other than plaintiffs' alleged anticompetitive conduct. Plaintiffs have made a sufficient showing to require defendants to produce (for attorneys' eyes only) the pricing information embodied in the documents produced by defendants. In contrast, plaintiffs have f ailed to establish that the identities of their competitors' customers are relevant to defendants' antitrust counterclaims.[7] Plaintiffs posit that "[p]erhaps defendants were unable to grow their business because they lacked a stable customer base, or because they had problems maintaining ongoing relations with their customers." 5/12/06 Pl. Letter at 2. Absent a more particularized showing from plaintiffs, defendants need not disclose the specific identities of their customers to enable plaintiffs to test these theories. Rather, in lieu of "unredacting" information identifying their customers, defendants may assign a code to each customer and include the corresponding code on each redacted document. In this way, plaintiffs will be able to assess defendants' success in attracting repeat business and thus can test whether defendants "had problems maintaining

---

[7] As neither side has discussed defendants' Sixth Counterclaim for Slander Per Se (see 2d Am. Ans. ¶¶ 126-28), the Court assumes that defendants have disclosed the identities of the customers to whom the allegedly slanderous statements were made.

ongoing relationships with customers." Id.[8]

For the foregoing reasons, the Court rules that plaintiffs are entitled to "downstream data" consisting of pricing information and codes corresponding to defendants' customers.[9]

## CONCLUSION

Plaintiffs' motion for a compulsion order is granted in part and denied in part. By November 13, 2006, defendants shall produce the documents demanded in a form consistent with this opinion.

**SO ORDERED.**

**Dated:  Brooklyn, New York
         November 2, 2006**

                                          **ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**

---

[8] Plaintiffs will be able to make this assessment without the names of specific customers. In any event, due to an apparent oversight in the redaction process, plaintiffs are in possession of the name of at least one of defendants' customers. See, e.g., 4/4/06 Pl. Letter, Exhibit F (document #002894).

[9] This ruling is not inconsistent with those in the cases on which defendants rely. For example, in Vitamins Antitrust Litigation, the dispute presented to the court involved only direct purchaser plaintiffs, who expressly stipulated that they were seeking to recover only the overcharges paid on vitamin purchases. 198 F.R.D. at 298 n.4. Significantly, other plaintiffs, who -- like defendants in this case -- were also seeking damages "for business lost as a result of predatory conduct," agreed to produce certain financial documents including those relating to their sale and marketing of vitamin premixes. See id. Therefore, the court in Vitamins Antitrust Litigation was not faced with the scenario presented here.